## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE  DIVISION

Block "T" Operating, LLC                                  Civil Action No. 15-00640

versus                                                              Judge Rebecca F. Doherty

Freeman, et al                                  Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Pending, on referral from the district judge, is a Motion To Dismiss Under the Doctrine of Abstention, Under Rule 12(b) For Lack Of Jurisdiction And Failure To State A Claim And Under Rule 19 For Failure To Join A Party filed by Defendants, Joseph B. Freeman, Fr., Mabel T. Freeman, John T. Block and Sally G. Block (referred to as "the Freemans" or "Defendants")  [Rec. Doc. 5] and Plaintiff, Block "T" Operating, LLC's (referred to as "Block "T""), Memorandum in Opposition [Rec. Doc. 9], as well as Supplemental Memoranda filed by the Freemans, [Rec. Doc. 16] and Block "T" [Rec. Doc. 17].  For the reasons that follow, it is recommended that the motion to dismiss be granted.

### I. Factual and Procedural Background

The issues related to this action began in a lawsuit filed on December 13, 2011, by the Freemans against Block "T" in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana, ("15th J.D.C."), *Freeman v. Block "T" Operating, LLC*, *et al*, Docket No. C-2011-7167, Division I. *R. 9-1; 20-1*. Defendants, (1) Joseph and Mabel Freemen and (2) John and Sally Block, were assigned overriding royalty interests in three oil wells owned by Kurios Oil & Gas, LLC ("Kurios"). The Assignments of Overriding Royalty Interests ("the Assignments") in the record indicate that in

December 2008, Kurios conveyed each couple "2.500% of 8/8ths" of the overriding royalty interests in two of the wells at issue situated in Acadia Parish, and "2.456116% of 8/8ths" of the overriding royalty interest in a well situated in Jefferson Davis Parish. *Id.* By a March 1, 2010 Assignment and Bill of Sale, Kurios conveyed to Block "T" Petroleum, Inc.,[1] a 20% working interest and a 14% net revenue interest in the Acadia Parish wells and a 45.9294% working interest and a 31.623975% net revenue interest in the Jefferson Davis Parish well. *R.9-1.* Various other parties, including Block "T", also received working interests in the subject wells by those assignments. *Id.*

In October of 2010, Block "T", took over accounting of the wells and assumed payment of the Freemans' overriding royalty interests. After receipt and inspection of the land files received from Kurios in April 2011, Block "T" discovered the Assignments were not in the file. Block "T" requested that the Freemans provide proof of their claims for overriding royalty interests. The Freemans produced copies of the Assignments dated and notarized on December 15, 2008, but not recorded until July 11, 2011. Block "T" suspended payment to the Freemans asserting that because its claim to the working interest was recorded before the Freemans recorded the Assignments, Block "T" was not required to honor the Assignments under the Public Records Doctrine.

The Freemans filed a motion for summary judgment in the state court proceeding asserting that Block "T" owed them payment of the overriding royalty

---

[1] Block "T" Petroleum, Inc., a Texas corporation, owns 3.181% of Block "T" through its limited partnership, Block "T" Producing, L.P. *R. 20.*

interest revenues since April 2011. *R. 5-2*. The court granted the Freemans' motion on September 17, 2012. *R. 5-12*. In its ruling, the court explained that Kurios reserved a leasehold interest by virtue of the assignment between Kurios to Block "T" Petroleum, Inc., sufficient to create the overriding royalty interest to the Freemans. Thus, "[t]he subsequent recorded assignments to [the Freemans] do not have any affect on the participation of Block ["T"] in production. Block ["T"] still pays its joint interest billing based upon 20% working interest and receives a 14% net revenue interest." *Id.* The court's ruling was made a final judgment on October 16, 2012. *R. 5-2*.

The Louisiana Third Circuit Court of Appeal affirmed the district court's decision.[2] In its ruling the appellate court distinguished between Block "T" 's role as the party who distributes the revenues from the wells and it's role as one of the working interest and net revenue interest owners. *R. 5-3*. The appellate court held that Block "T", in its role as the revenue distributor, should have paid the Freemans the percentages of overriding royalty interest claimed. The court further held "there is no indication that payment of [the Freemans'] overriding royalty interests affect the percentage of net revenue interest ultimately received by Block "T" in its capacity as an owner of the working interest and net revenue interest. *Id.*

Block "T" 's writ application to the Louisiana Supreme Court was denied on November 8, 2013.[3] *R. 5-4.* On March 28, 2014, the Freemans filed a motion to

---

[2] *Freeman v. Block "T" Operating, LLC*, 118 So.3d 1279, 1284 (La. App. 3 Cir. 2013).

[3] *Freeman v. Block "T" Operating, LLC*, 125 So.3d 455 (La. 2013).

3

release the bond Block "T" posted with its suspensive appeal based on Block "T" 's satisfaction of the $140,678.53 judgment. *R. 5-5.*

Thereafter,  the Freemans filed a Motion for Summary Judgment for Penalties and Attorneys' Fees in the state court related to the trial court's October 16, 2012 judgment. On May 5, 2014, while the parties were actively litigating the state court suit, Block "T" took the deposition of Steven Shane Hinds, president of Kurios. Block "T" contends this was when it first discovered that the Assignments creating the Freemans' overriding royalties did not exist in 2008, contrary to the "December 15, 2008" date on the Assignments and the notarial statements. Hinds testified that when he received Block "T" 's requests for copies of the Assignments, he drafted and executed the Assignments at issue because the original agreements assigning the Freemans' overriding royalty interests were based on a "handshake deal only." On May 8, 2014, the Freemans filed an Act of Correction into the parish records indicating that the "notarial acknowledgments [in the Assignments] were executed on or after May 10, 2011." *R. 5-11.*

In its Opposition to Plaintiffs' [the Freemans] Motion for Summary Judgment for Penalties and Attorney's Fees, Block "T" disclosed to the court that Hinds "testified that until the Assignments of Overriding Royalty Interests in favor of [the Freemans] were created in May of 2011, it was a 'handshake' deal only, 'a gentleman's agreement,' no other documentation or letter agreement existed memorializing the overriding royalty assignments at issue." *R. 5-13.* Block "T" attached the deposition of Hinds as well as Hinds' correspondence related to creating

4

the Assignments. *Id.* Block "T" further stated, "[t]he simple fact of the matter is the Assignments did not exist until the Summer of 2011 and they knowingly put an earlier, incorrect date on the documents." *Id.* Block "T" cited Louisiana jurisprudence for the proposition that transfer or creation of an overriding royalty must be in writing and cannot be acquired or proved by parole evidence. *Id.* In addition to providing the foregoing recently obtained information, Block "T" argued that because it provided reasonable grounds for nonpayment of the Overriding Royalty Interests under the Louisiana Public Records Doctrine, it should not be sanctioned. *Id.*

On September 11, 2014, the state district court issued its ruling, granting the Freemans' motion for penalties and attorney's fees. *R. 5-6.* The court held that because Block "T" had a statutory "continuing obligation" to make the interest payments to the Freemans under LSA-R.S. 31:212.23, "it should have filed a concursus proceeding rather than simply converting the overriding royalties into their own account." *Id.* The court's ruling made no mention of Block "T" 's contentions that the Assignments were not signed on the date sworn to or of Hinds' deposition testimony. *Id.* The court entered a final judgment granting the motion on November 24, 2014.[4] *R. 5-9.*

On or about December 10, 2014, Block "T" filed a Motion For New Trial in which it contended, pursuant to, *inter alia*, La. C. Civ. Proc. art. 1972 (2):

> Block "T" "discovered new evidence in this case after the judgment on the merits of the claims, but submitted to the court in defense of the [the Freemans'] Motion for Summary Judgment for Penalties and Attorney's Fees .... The revelation of the backdated documents and the real dates of

---

[4] The court's judgment provided $140,678.53 in penalties and $67,530.00 in attorneys' fees.

> execution was made on May 5, 2014, the date of the deposition of Shane Hinds. Therefore, the true nature of the execution of the royalty documents and the true date of execution was discovered on May 5, 2014, twenty (20) months after the judgment was entered on the merits of the issue of royalty payments."

*R. 5-8.* Block "T" 's motion for new trial was denied on December 15, 2014. *Id.* After the appeal delays had run, the Freemans filed a Petition to make the Judgment executory and for garnishment. *R. 5-9.* On February 27, 2015, the court made its judgment executory and ordered that a writ of *fieri facias* issue, instituting garnishment proceedings against Block "T." *Id.*

On March 17, 2015, Block "T" filed a "Petition To Annul Judgment Under CCP Article 2004" in the Fifteenth Judicial District Court, Lafayette Parish, requesting that the October 16, 2012 Judgment be annulled, and attaching a copy of the Judgment. *R. 5-10.* The next day, March 18, 2015, Block "T" filed this federal court action captioned "Petition For Relief From A Judgment Under FRCP 60." *R. 1.* Both petitions state identical factual allegations that the Freemans intentionally created and falsified the December 15, 2008 Assignments for Overriding Royalty Interests, and pray that the October 16, 2012 Judgment be annulled and the Assignments and Acts of Correction be stricken from the public records.

The Freemans filed the Motion to Dismiss the Complaint at bar on April 8, 2015. *R. 5.* A hearing on the motion to dismiss was conducted by the undersigned's predecessor, Magistrate Judge Hill, on May 27, 2015. *R. 15.* Judge Hill took the motion under advisement and ordered the parties to file briefs as to whether or not this Court has authority under *Erie* to nullify a judgment of a State Court based on allegations of fraud. The parties filed responses to the Court's order. *R. 16; 17.*

On August 28, 2015, the undersigned issued a *sua sponte* order for Block "T" to file a brief "with summary-judgment-type evidence" regarding the citizenship of Block "T" Operating LLC and the amount in controversy in this case. Pursuant to this Court's order, Block "T" filed its response, *R. 20*, the Freemans filed their opposition to Block "T" 's response, *R. 21*, and Block "T" filed a reply memorandum thereto, *R. 22*.

### III. Legal Standard

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). However, conclusory allegations and unwarranted deductions of fact are not accepted as true,  *Collins v. Morgan Stanley*, 224 F.3d at 498, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The allegations must be sufficient "to raise a right to relief above the speculative level," *Id.* at 555. and "the

pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 127 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id*.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556.

### IV. Contentions of the Parties

The Freemans assert that Block "T" 's Complaint should be dismissed based on, (1) the Doctrine of Abstention, (2) the amount in controversy of this alleged

diversity action is not more than $75,000, (3) failure to state a claim upon which relief can be granted, specifically based on res judicata and/or lack of privity and/or untimeliness, and alternatively, (4) failure to join Kurios as a necessary party under Rule 19.

Block "T" argues, (1) the *Colorado River* Abstention doctrine does not apply, (2) the amount in controversy is approximately $400,000, the amounts awarded by the state court judgment (3) res judicata does not bar Block "T" 's claim to overturn a fraudulently obtained judgment under Federal Rule of Civil Procedure 60, and (4) Kurios is not a necessary party to this litigation. The undersigned will address the parties' contentions as follows.

*Legal Analysis*

*1. Whether Or Not This Court Can Nullify The State Court's Judgment*

In light of Judge Hill's order that the parties brief whether or not an action in nullity of a state court final decision can be brought in this federal court, the Court will initially address that issue. In their briefs to the Court, the parties agree that in an action to annul a state court judgment for fraud or ill-practices in federal court under the court's diversity jurisdiction the court must apply Louisiana Code of Civil Procedure articles 2004 and 2006.

Actions for nullity are governed by Louisiana Code of Civil Procedure Articles 2001 through 2006. *Breaux v. City of New Orleans*, 1999-1188, 753 So.2d 333, 335 (La.App. 4 Cir. 2000). With regard to the issue in this case, Louisiana Code of Civil Procedure, art. 2004, provides:

A. A final judgment obtained by fraud or ill practices may be annulled.

B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.

La. C. C.P. art. 2004. "Such a judgment is not an absolute nullity; the nullity must be properly decreed within the time prescribed. The established jurisprudence of this State requires that such grounds be asserted in a direct action and not raised collaterally.... What is meant by a 'direct action' is that the party praying for the nullity of a judgment must bring his action by means of a petition; and the adverse party must be cited to appear, as in ordinary suits." *Nethken v. Nethken*, 307 So.2d 563, 565 (La.1975).

Further, Louisiana Code of Civil Procedure, art.2006, provides:

An action to annul a judgment must be brought in the trial court, even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court.

La. C. C.P. art. 2006.  In *Piper v. Olinde Hardware & Supply Co., Inc.*, 288 So.2d 626 (La.1974), the Louisiana Supreme Court held that the venue established in Article 2006 is nonwaivable and is therefore jurisdictional in nature. *Id.* at 629. Further, the court clarified the article's requirement that an action to annul be brought in 'the trial court' means that the action must be brought in the same judicial district court which rendered the judgment sought to be annulled irrespective of division. *Id.*

Both parties cite *Health Net, Inc. v. Wooley*, 534 F.3d 487 (5th Cir. 2008) as the pertinent jurisprudence. In *Health Net*, the plaintiff attempted to invoke the federal court's diversity jurisdiction to assert its state-law cause of action to annul a judgment

obtained by fraud or ill practices under the Louisiana Code of Civil Procedure articles 2004 and 2006. The Fifth Circuit examined the district court's reliance on *Dulien Steel Products, Inc. v. Connell*, 252 F.2d 556, 559 (5th Cir.1958), which addressed the statutory forerunners of articles 2004 and 2006.  At the time *Dulien* was decided, Louisiana law did not permit a party to seek an annulment from the trial court if the judgment had been affirmed by the Louisiana Supreme Court, as the judgment in *Dulien* had been. *Id.* at 558–59. Because the plaintiff in *Dulien* could not seek an annulment under state law, the Fifth Circuit held that *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), forbade the district court from offering such an opportunity in federal court. *Dulien*, 252 F.2d at 558–59. Relying in part on *Dulien*, the district court in *Health Net* concluded that article 2006 deprived it of jurisdiction by mandating an exclusive venue, the trial court that rendered the judgment, for relative nullity actions brought under article 2004.

The Fifth Circuit disagreed, noting that *Dulien* addressed the statutory forerunners of articles 2004 and 2006 which precluded the district court's subject matter jurisdiction. The court stated, "Louisiana law has changed since then. Article 2006 pellucidly offers the opportunity to annul a judgment in the trial court "even though the judgment ... may have been affirmed on appeal.... Applying the *Dulien* rationale, we would reach a conclusion opposite to that of the district court*." Health Net*, 534 at 493. The further stated, "Because annulment is available in state court, *Erie* suggests the same opportunity is available in federal courts exercising their diversity jurisdiction." *Id.*  The court explained, "[w]hether *Erie* actually makes available, in federal court, the opportunity to annul a judgment for 'ill practices'

depends, however, on whether article 2006 is a matter of substance or procedure." *Id.* Finding it was undisputed that the district court had diversity jurisdiction, the court held the district court's conclusion that it did not have subject matter jurisdiction was erroneous. *Id.* Thus, the issue should have been whether or not the plaintiff could seek a state court annulment in federal court under the *Erie* doctrine.[5]

As a general rule, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ("*Erie* doctrine"), when a plaintiff asserts a state-law claim in federal court, the federal court applies state substantive law to adjudicate the claims but applies federal procedural law. *See Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 395 (5th Cir.2003). Thus, *Health Net* directed the federal court sitting in diversity to determine whether or not La. C. Civ. Pro. art 2006 is a substantive law that limits the venue to "the same judicial district court which rendered the judgment" and precludes the federal court from considering the nullity action, or a procedural law which allows the federal court to consider the action under *Erie.*

While both parties addressed this issue, neither answered the question as to whether article 2006 was substantive or procedural—the Freemans submitted that it was up to this Court to decide and Block "T" stated that the Court could decide the nullity action under either scenario. *R. 16; 17*. Block "T" cited *Akin v. Louisiana National Bank of Baton Rouge*, 322 F.2d 749 (5th Cir.1963) in support of its position that "federal jurisdiction cannot be defeated by a state statute which prescribes the court in which the action is to be brought." *Id.* at 754. Because Article 2006 is

---

[5] The *Health Net* district court was not required to determine whether art. 2006 was substantive or procedural because the Fifth Circuit held the Anti-Injunction Act was the proper ground for dismissing Health Net's state law claims. *Id.*

"jurisdictional," this Court agrees that, even assuming Louisiana Code of Civil Procedure article 2006 is a substantive law, it cannot serve to defeat a federal action reviewing the state court final judgment under diversity jurisdiction.[6] The issue with which this Court does not agree, however, is that diversity jurisdiction exists in this case in the first place.

## 2. Whether This Court Has Diversity Jurisdiction

In its complaint, Block "T" alleges diversity jurisdiction exists under 28 U.S.C. § 1332. *R. 1.* Diversity jurisdiction exists when: (1) there is diversity of citizenship between the parties, and (2) the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332; *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 387 (5th Cir.2009). Block "T" represents that it is an L.L.C. organized under the laws of Nevada in which 96.819% is owned by a Texas corporation whose principal business is in Texas, and 3.181% is owned by Block "T" Producing, L.P., whose principal place of business is in Texas. It further represents that Block "T" Producing, L.P. is owned 100% by Block "T" Petroleum, Inc., a Texas corporation whose principal place of business is in Texas. *R.20.* As it is undisputed that the Freemans are all Louisiana residents, *R. 21*, diversity between the parties exists.

The Freemans do not dispute diversity of citizenship, but contend that the

---

[6] While this Court has been unable to locate any jurisprudence indicating whether article 2006 is a substantive or a procedural law, it is helpful "to note that the Civil Code was designed as a comprehensive, systematic and coherent enactment to regulate substantively most areas of private law. A. Tate, Jr., Techniques of Judicial Interpretation in Louisiana, 22 La.L.Rev. 727, 744 (1962). The Louisiana Code of Civil Procedure, on the other hand, was enacted to consolidate the procedural rules which are applicable to civil actions and proceedings. A provision of the Code of Civil Procedure, therefore, must be construed in light of the substantive provisions of the Civil Code." *Goldking Properties Co. v. Primeaux,* 478 So.2d 1207, 1209 (La. 1985).

amount in controversy in this case is not more than $75,000. Block "T", however, contends in its briefs that the amount in controversy is met because it seeks to annul a judgment "in the amount of $140,678.53 for unpaid royalties, judicial interest of $9,224.95, on that judgment, $140,678.53 in penalties [ ], $15,339.74 in legal interest on the penalties judgment, $67,530.00 for attorney's fees and costs, and $1,778.50 in court costs." *R. 9, p. 11; R. 20, p. 4.*

The Freemans argue that the state district court as well as the Louisiana Third Circuit found that Kurios reserved a sufficient leasehold interest to create the overriding royalties later assigned to the Freemans so that the Assignments do not affect or bear against the leasehold interest in the wells or in any of the owners' working interest and net revenue interest, including Block "T" 's. The Freemans' affidavit and the exhibits attached thereto evidence that a portion of the monies repaid to the Freemans by Block "T" resulted from Block "T" 's wrongful distribution of the Freemans' overriding royalty interest to the working interest owners. *R. 21-1.* As a result of the October 16, 2012 judgment, those monies were repaid by the working interest owners including Block "T", whose share of the repayment to the Freemans was $13,153.10. *R. 21, Exh. 1, Affidavit; R. 21-1, pp. 12-13, 28-29.* The Freemans further assert that if the Assignments were declared null, the overriding royalty interest in the wells and connected mineral leases, as well as the funds from production, would not accrue to or benefit Block "T" because they would remain with Kurios. In summary, the Freemans maintain that Block "T" 's claim for relief does not meet the jurisdictional amount because Block "T" has no claim to the overriding royalties or the funds attributable thereto, which were the subject of the October 16,

2012 judgment.

Block "T" 's action requests only a nullification of the <u>October 16, 2012 </u>state court judgment and makes no demand for any monetary judgment. "In actions seeking declaratory or injunctive relief the amount in controversy is measured by the value of the object of the litigation." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir.1983). In other words, "[t]he amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1252–53 (5th Cir.1998).

Here, there is no amount in controversy nor any right to be protected. It is undisputed that the $146,468.44 judgment amount was repaid to the Freemans and, even assuming that the judgment would be declared null, Block "T" would neither receive any monetary benefit nor owe any money. Moreover, annulling the Assignments would have no effect on Block "T". In the event of any nullity, the Assignments would presumably be null and void and the overriding royalty interests would revert to Kurios, the entity in privity with the Freemans in the Assignments of overriding royalty interests.  Nor can Block "T" use the amount it paid pursuant to the November 24, 2014 judgment for penalties, interest and attorney's fees in any jurisdictional amount determination because it makes no claim in the Complaint related to that judgment, which has been fully paid and no longer exists.

Based on the foregoing, this Court finds that the  amount-in-controversy requirement is not satisfied, and thus, that no diversity jurisdiction exists over this action.

*3. Whether Block "T"'s Complaint Fails To State A Claim Under Rule 12(b)*

*a. Res Judicata*

Block "T" contends that the state court final judgment should be annulled based on the Freemans' actions of executing the Assignments with "falsified and backdated documents." The Freemans argue that Louisiana's principle of res judicata includes issue preclusion which prevents litigation of the same issues between the same parties. Because Block "T" set forth a claim for relief based upon the execution dates of the Assignments (i.e. the validity of the Assignments), before the state trial court which became a final judgment, they contend that Block "T" is precluded from asserting the same issue or claim in this Court.

"To determine the preclusive effect of a prior Louisiana court judgment, if any, this Court must apply Louisiana law." *Lafreniere Park Foundation v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000). Louisiana Revised Statute 13:4231 sets forth Louisiana's principle of res judicata and states, in pertinent part, "[e]xcept as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent: ... (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action." La. R.S. 13:4231.

"Louisiana Revised Statute 13:4231 provides a broad application of res judicata to foster judicial efficiency and protect litigants from duplicative litigation. With the amendment of § 4231 in 1990, Louisiana broadened its res judicata law to

correspond with federal law by embracing the notion of 'extinguishment' of the cause of action through the preclusion concepts of 'merger' and 'bar.' The central inquiry is not whether the federal action is based on the same cause or cause of action (a concept which is difficult to define) but whether the federal action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the state principal or reconventional action." *Id.* at 810 (internal citations omitted).

The state court's judgment granting the Freemans' demand in this case bars a subsequent federal suit if "(1) the judgment is valid; (2) the judgment is final; (3) the parties to the two actions are the same; (4) the cause of action asserted in the federal suit existed at the time of the prior state court judgment; and (5) the cause of action asserted in the federal suit arose out of the transaction or occurrence that was the subject matter of the state court litigation. *See* La.R.S. 13:4231. Louisiana's doctrine of res judicata can only be invoked if all essential elements are present and established beyond all question. *See Kelty v. Brumfield*, 633 So.2d 1210, 1215 (La.1994)." *Lafreneiere Park* at 808.

Here, the fourth element is not satisfied. The issuance of the October 16, 2012 Judgment is the only judgment at issue in this case. At the time that judgment was entered, the claim related to the "falsified and backdated" Assignments was not known. Rather, the only issue was whether or not the Assignments were valid under the Public Records Doctrine. The backdating/falsification of the Assignments became known by Block "T" during the litigation of the penalties and attorney's fees claim and was in fact raised by Block "T" in it's Opposition Memorandum or its Motion For New Trial. *R. 5-8*. Neither the state court's November 24, 2014 Judgment

17

granting the Freemans penalties and attorney's fees nor its December 15, 2014 Order denying Block "T" 's motion for new trial, however, was raised by Block "T" in its Complaint.

This Court disagrees that Block "T" 's pending claims for falsified and backdated Assignments are barred by res judicata or issue preclusion. While Block "T" asserted the underlying facts of these claims in support of its Public Records Doctrine claims, the state court did not issue its October 16, 2012 Judgment on the merits regarding these claims because they were not before it.

*b. Untimliness Under Rule 60(b)*

Block "T" brings this action under Rule 60 of the Federal Rules of Civil Procedure for relief from a final state judgment based upon fraud, misrepresentation or misconduct by the Freemans. Rule 60 specifies the procedures by which a party can obtain relief from a judgment or order. Rule 60(a) applies only to clerical mistakes; none of which have been alleged here. Rule 60(b) authorizes two additional procedures: "1) a motion in the court and in the action in which the judgment was rendered, which may be filed within a 'reasonable time' after entry of the judgment; or 2) a new and independent action, which may be commenced in a court other than that which rendered the judgment. Fed.R.Civ.P. 60(b); 7 *Moore's Federal Practice* ¶ 60.18[8], p. 60–142 (1991)." *Mason v. Judges of U.S. Court of Appeals for District of Columbia Circuit in Regular Active Service Acting in Their Official Capacities*, 952 F.2d 423, 426, 293(D.C. Cir.1991).

The Freemans contend that Block "T"'s action should be considered under Federal Rule of Civil Procedure 60(b)(3) which provides that "the court may relieve

a party or its legal representative from a final judgment, order, or proceeding for the following reasons: ... fraud, misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Because a motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding, the Freemans assert that Block "T"'s claims under Rule 60 must be dismissed as untimely.

Block "T" does not address the Freemans' untimeliness contention in its opposition memorandum, but responds that "Rule 60 frees the courts to apply [its] inherent power" to vacate a judgment obtained by fraud. *R. 9, p. 11*. Based on this response and for purposes of this motion only, the Court will treat this action as an independent action pursuant to the "Saving Clause" of Rule 60(b) rather than a Rule 60(b) motion.[7] *Ballew v. U.S. Dept. of Justice*, No. 99–11308, 2000 WL 1901696 (5th Cir. 2000) (citing11 Charles Alan Wright & Arthur R. Miller, § 2868 (2d ed.1986). The "Saving Clause" allows "a court to entertain an independent action to relieve a party from a judgment, order, or proceeding ... or to set aside a judgment for fraud on the court" so long as the motion is made "within a reasonable time." Fed. C. Civ. Pro. Rule 60(d). As such, the more lenient temporal requirement under Rule 60(d) of being filed within a "reasonable time" applies to an independent action.

Block "T" alleges it first discovered the Assignments were backdated on May

---

[7]  The undersigned makes no determination as to the rule of law that "Rule 60(b)(6) is unavailable when the relief sought is within the coverage of some other provision of Rule 60(b)." *Gulf Coast Building and Supply Company v. International Brotherhood of Electrical Workers, Local No. 480*, 460 F.2d 105, 108 (5th Cir. 1972). Nor has this Court considered whether or not Block "T" has plead the sort of "grave miscarriage of justice" required to sustain an independent equitable action under the "Savings Clause" of Rule 60(b). *Ballew*, No. 99–11308, 2000 WL 1901696, *2 (5th Cir. 2000).

5, 2014 during the deposition of Steven Shane Hinds, president of Kurios. Because Block "T" filed this Complaint on March 18, 2015, within one year of discovery, it was filed within a reasonable time.

*4. Abstention*

The Freemans assert that the doctrine of abstention applies under the exceptional circumstances presented in this case. Pursuant to the *Colorado River* abstention doctrine, a district court may stay or dismiss a federal suit when there is a parallel suit pending in state court. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The *Colorado River* abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources. *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189 (5th Cir.1988). It represents an "extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River* at 813. Specifically, "*Colorado River* abstention by a federal court is only proper when there are parallel proceedings in both state and federal court involving the same parties and the same issues." *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir.2006). Under *Colorado River*, a district court may abstain from a case only under "exceptional circumstances." *Colo. River,* at 813.

The first inquiry in this analysis is whether the state and federal claims are parallel. Certainly, the claims by Block "T" against the Freemans are parallel. Block "T" 's state court petition and its federal complaint are identical.[8] *R. 1*; *R. 5-10.* The

---

[8] The only difference in the two documents is the addition of allegations related to federal jurisdiction in the federal complaint. *R. 1, ¶¶ 1–5.*

claims in both federal and state courts involve the same parties and the same issues. In both the state and federal claims, Block "T" sued the Freemans for intentionally creating and falsifying the December 15, 2008 Assignments for overriding oil and gas royalties, and request that the state court's October 16, 2012 Final Judgment be annulled and the Assignments and Acts of Correction by the Freemans be stricken from the public records. *Id.*

As the undersigned finds that these suits are parallel, the Court will engage in the multi-factored analysis to determine whether there are "exceptional circumstances" warranting a stay of the federal litigation. The Supreme Court has identified six nonexclusive factors to consider: (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Stewart*, 438 F.3d at 492. The Court should not apply these factors mechanically; rather, the Court should carefully balance them "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*.

The first *Colorado River* factor questions whether either the state or federal court has assumed jurisdiction by taking control over any res or property. While the state court previously ruled that the rights to those royalties properly belong to the Freemans, presently neither court has control over the rights to the overriding oil and gas royalties in this case. The absence of this factor is not, however, a "neutral item, of no weight in the scales." *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 738 (5th

Cir.1999) (quoting *Evanston Ins. Co.*, 844 F.2d at1191). Rather, the absence of this first factor weighs against abstention. *Id*.

Second, the relative inconvenience of the federal and state fora is "analyzed as to 'whether the inconvenience of the federal forum is so great' that abstention is warranted." *Kelly Inv., Inc. v. Continental Common Corp.*, 315 F.3d 494, 498 (5th Cir.2002)(quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir.1988)). Given that the two courts are only blocks apart in downtown Lafayette, this factor weighs against abstention.

The real concern at the heart of the third *Colorado River* factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings ...." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir.2000)). While duplicative litigation is permitted, *Colorado River* prevents "piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir.2006) (quoting *Black Sea Inv. v. United Heritage Corp.*, 204 F.3d 647, 650–51 (5th Cir.2000)).[9] Here, that danger is evident. This case presents state law questions of substantial public import related to the rights to royalty interests in an oil and gas well located in Louisiana which was previously decided in Louisiana state court. The state court issued a final decision which was upheld by the state court of appeals and writ was denied by the state Supreme Court. The state court is the more appropriate vehicle for the complete and prompt resolution of the state law claims governed by

---

[9] The Supreme Court has emphasized that, in the context of abstention doctrine, piecemeal adjudication is disfavored. *See, e .g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1999).

the Louisiana Mineral Code[10], which are identical to those in this Court, between identical parties. While an inconsistent ruling could easily be reached in the event the case progresses in this Court, in light of the state court's final judgment, piecemeal litigation will occur. Consequently, this factor weighs heavily in favor of dismissing the federal court proceeding. *See LAC Real Estate Holdings, L.L.C. v. Biloxi Marsh Lands Corp.*, 320 Fed.Appx. 267, 271 (5th Cir.2009).

The fourth factor concerns the order in which jurisdiction was obtained by the concurrent forum. Simple filing order, however, is not always dispositive. Instead, the Court must evaluate how much progress has been made in the two suits. *Stewart*, 438 F.3d at 492–93. There is no dispute that the related state court action was filed the day before this action. While the parties have not addressed the present status of the related state court action, there is no indication that it has not been progressing normally. On the other hand, the proceedings in this Court have not progressed beyond the filing of the Complaint and this motion to dismiss. The Supreme Court has emphasized that a factor favoring dismissal of a federal suit is "the apparent absence of any proceedings in the District Court, other than the filing of the complaint." *Murphy*, 168 F.3d at 738 (quoting *Colorado River*, 424 U.S. at 820). Thus, this factor weighs in favor of abstention.

Next, the court must consider whether and to what extent federal law provides the rules of decision on the merits. As provided by the parties' briefs regarding the Court's authority under *Erie* to nullify a judgment of a State Court based on

---

[10] The official comment to Article 214 of the Mineral Code notes that the Louisiana Legislature enacted the Mineral Code in order "to create a single body of mineral law uniformly applicable, to the extent constitutionally permissible, to both existing and future mineral rights."

allegations of fraud, the claims in both courts must be determined under a statute which provides for annulment of a final state court judgment based on fraud or ill-practices.[11] Even in the absence of a federal law issue, however, "[the Court's] task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional circumstances,' the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Black Sea*, 204 F.3d at 651 (5th Cir.2000)(quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21). Thus, "the presence of state law issues weighs in favor of surrender only in rare circumstances." *Id*. Here, there is a complete absence of a federal law question.  More importantly, however, is the existence of a state law final judgment which plaintiff contends should be annulled by this federal court. "States have important interests in administering certain aspects of their judicial systems, [including] enforcing the orders and judgments of their courts." *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494-95 (5th Cir. 2008) (citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 12–13 (1987). For this reason, the Court finds "exceptional circumstances" warrant abstention.

Finally, the court must determine the adequacy of the state proceedings in protecting the rights of the party invoking jurisdiction. This final consideration can only be "a neutral factor or one that weighs against, not for, abstention." *Murphy*, 168 F.3d at 739 (quoting *Evanston*, 844 F.2d at 1193). This factor is neutral.

In this case, three of the six factors weigh heavily in favor of abstention, while

---

[11] Block "T" filed its complaint under Federal Rule of Civil Procedure 60. Rule 60 is "purely procedural" and requires a private cause of action for relief from a final judgment.

two factors weigh against abstention and one of the factors is neutral. After balancing all of the *Colorado River* factors and weighing the competing interests, the undersigned finds that the federal court proceeding should be dismissed in order for the state court which decided the judgment at issue to determine whether or not fraud was committed.

*5. Whether or Not Kurios Oil & Gas is a Necessary Party*

In light of the foregoing analysis, the Court need not reach the arguments concerning whether or not Kurios as the assignor of the overriding royalty interests at issue must be joined in this lawsuit and any further discussion of this issue is pretermitted.

*V. Conclusion*

It is hereby recommended that the Motion To Dismiss Under the Doctrine of Abstention, Under Rule 12(b) For Lack Of Jurisdiction And Failure To State A Claim And Under Rule 19 For Failure To Join A Party filed by the defendants, Joseph B. Freeman, Fr., Mabel T. Freeman, John T. Block and Sally G. Block [Rec. Doc. 5] be **GRANTED** and that the claims of Block "T" Operating, LLC be dismissed without prejudice for lack of jurisdiction, and alternatively, under the *Colorado River* Doctrine.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Lafayette, Louisiana, this 16th day of November, 2015.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

26